1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COSMONOVA, LLC,<br><br>                          Plaintiff,<br><br>v.<br><br>BIOFILM, INC., et al.,<br><br>                          Defendants. | Case No. 24-cv-1453-MMA-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 19] |

On December 9, 2024, Defendants BioFilm, Inc. and Combe, Inc. (collectively, "Defendants"), filed a motion to dismiss Plaintiff Cosmonova, LLC's ("Plaintiff") amended complaint. Doc No. 19. Per the Court's special briefing schedule, Doc. No. 18, Plaintiff filed a response in opposition on December 23, 2024, to which Defendants replied on January 17, 2025. Doc. Nos. 20, 21. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil

Procedure 78(b) and Civil Local Rule 7.1.d.1.  *See* Doc. No. 18.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## I. BACKGROUND[1]

Plaintiff, a limited liability company, serves as a distributor of health, beauty, and personal care products in Latin America, including both its own branded products and products produced by other American entities.  Doc. No. 14 ("FAC") ¶ 6.  Defendant BioFilm, a corporation, manufactures Astroglide personal lubricant in all its various configurations.  *Id.* ¶¶ 7, 9 n.1.  Defendant Combe, also a corporation, likewise manufactures various personal care products.  *Id.* ¶ 8.  On or around May 25, 2023, Combe announced that it acquired Biofilm, which is now either a wholly owned subsidiary of Combe, or "has had all of its assets, liabilities, and contractual obligations assigned to" Combe.  *Id.*

In 2018, BioFilm began discussions with Plaintiff as to the potential that Plaintiff could take over Astroglide's distribution in Latin America.[2]  *Id.* ¶ 10.  BioFilm had previously engaged other distributors in that endeavor, though those distributors were unsuccessful at expanding Astroglide's product reach in their respective "target countr[ies]."  *Id.*  These distributors had, on occasion, also caused "challenges" to BioFilm, including by selling its products back to retailers in the United States and thus undermining BioFilm's direct sales.  *Id.* ¶ 11.  BioFilm also sought a single distributor for the totality of the region, rather than one per country, and hoped to expand its footprint in Latin America by seeking approval to sell in countries in which it did not already.  *Id.* ¶¶ 10, 13.

---

[1] Because this matter is before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the allegations set forth in the Complaint and draw all inferences in the light most favorable to the nonmovant.  *See Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).

[2] Plaintiff does not provide an exact definition for "Latin America," but based upon the FAC and common usage, the Court interprets this as including South America, Central America, and North America south of the United States.

Interested in filling this role, Plaintiff and BioFilm came to a series of oral agreements regarding distribution of Astroglide products in Latin America. *Id.* ¶ 14.  At this time, Plaintiff already had established relationships with retailers, knowledge of the region's regulatory scheme(s), and had "already made successful sales of products in Colombia." *Id.* ¶ 13.  Under these agreements the parties both understood that, for terms of five years each, "[Plaintiff] would act as BioFilm's Master Distributor for Latin America[n] [countries], the timing and performance of which would naturally vary depending on each country's regulatory requirements, analysis of existing sales and competitor conditions, and [other such considerations]." *Id.* ¶ 14.  Plaintiff alleges that these agreements amounted to oral contracts. *Id.*

The parties agreed to the five-year terms because "a shorter duration . . . might not allow [Plaintiff] enough time to recoup its upfront costs in securing regulatory approval and other distribution-related expenses." *Id.* ¶ 15.  "Both parties agreed and understood that purported termination either expressly or by failure to perform by either party during this five-year term would constitute a breach of the agreements . . . ." *Id.*  Based on other agreements that BioFilm had with similar distributors, one of its executives informed Plaintiff's CEO—both at that time and after—that "BioFilm would extend [Plaintiff's] contract beyond five years if [Plaintiff] met the mutually agreed-upon . . . sales quotas for Astroglide." FAC ¶ 16.

Plaintiff and BioFilm's agreement also included the provision that Plaintiff would act solely as a distributor, in which it was limited to purchasing Astroglide from BioFilm and reselling it. *Id.* ¶ 17.  They likewise agreed that BioFilm would determine, "from time to time," the prices charged to Plaintiff. *Id.* ¶ 18.  Additionally, the parties agreed that Plaintiff could not sell its own or any third-party product in the countries for which Plaintiff was acting as Biofilm's Astroglide distributor. *Id.* ¶ 20.  "[A]ll efforts and funds expended by [Plaintiff] to build out a distribution network within that country" thus worked solely to the purchase and sale of BioFilm's products. *Id.* ¶ 20.  The parties agreed that the terms of their agreement would be interpreted by California law, where

BioFilm was headquartered and incorporated.  FAC ¶¶ 4, 21.

After entering into the initial oral agreements, BioFilm's executives confirmed the agreements in writing on several occasions.  *Id.* ¶ 22.  This included written, formal authorizations for Plaintiff to act as the exclusive Astroglide distributor in Colombia, Venezuela, and Mexico in November 2019, May 2020, and September 2022, respectively.  *Id.*  BioFilm likewise sent Plaintiff various pricing lists in May and July 2020.  *Id.*  An executive with BioFilm additionally confirmed at least some of the terms in recorded phone calls.  *Id.* ¶ 23.

Plaintiff entered its first oral distribution agreement with BioFilm in 2019 for operations in Colombia, confirmed by certain written communications in August 2019. *Id.* ¶ 27.  Plaintiff then "began preparing and collecting necessary documentation to obtain specialized registration for importing and distributing Astroglide in that country" and BioFilm's president "formally authorized [Plaintiff] to act as a distributor of Astroglide by way of written Letter of Authorization, appointing [Plaintiff] as the exclusive Astroglide distributor for that country" in November 2019.  *Id.*  Between 2019 and 2022, Plaintiff "continued to expend time and money into obtaining regulatory approval to distribute Astroglide in that country and in building out the necessary sales channels" including by seeking required regulatory approval for Astroglide's sale using BioFilm's confidential product summaries and studies, among other materials.  *Id.* ¶ 28. Plaintiff made its "first sales of Astroglide in Colombia . . . in 2021 . . . increased its sales revenue by several multiples in 2022, and was on track to again increase sales revenue for 2023."  *Id.* ¶ 29.

Plaintiff repeated the process for distribution in Venezula, entering into an oral agreement with BioFilm by May 2020, engaging regulatory counsel to register as a distributor of Astroglide in that Country, and receiving a Letter of Authorization from BioFilm's president to act as Astroglide's distributor there on May 19, 2020.  *Id.* ¶ 30. Plaintiff continued to work towards required regulatory approval for Astroglide in Venezuela from 2020 to 2023, submitting BioFilm's confidential product summaries and

studies, among other materials in pursuit of that goal.  FAC ¶ 31.

Plaintiff took similar steps to begin distribution in Mexico, receiving BioFilm's Letter of Authorization and securing the transfer of a Mexican regulatory certificate from BioFilm's prior distributor in that country to Plaintiff.  *Id.* ¶ 32.  The parties came to the respective oral agreement in 2022, though transferring the certificate took nearly two years.  *Id.*  Between 2022 and 2023, Plaintiff "expended time and money into obtaining regulatory approval to distribute Astroglide in Mexico and in building out the necessary sales channels."  *Id.*

Between June and November 2022, Plaintiff and BioFilm "entered into oral distribution agreements for Brazil, Chile, Peru, Ecuador, and Argentina" and  Plaintiff took steps to secure the relevant regulatory permissions in these countries.  *Id.* ¶ 34.  By approximately early 2023 at the latest, the two had "entered oral distribution agreements for Bolivia, Paraguay, and Uruguay and Chile."  *Id.* ¶ 36.

During this time, in late 2022 and at the urging of BioFilm's president, Plaintiff and BioFilm engaged in discussions about entering into "written contract that would encompass multiple territories and supersede the existing oral contracts," including by exchanging drafts that "reflected the material terms that the parties had already previously agreed to," and would "serve as an extension of the duration of the existing oral agreements."  *Id.* ¶¶ 24, 27.  The parties never finalized a written agreement, but Plaintiff "regularly appris[ed] BioFilm of its activities throughout multiple Latin American countries and BioFilm expressed and lent support for the partnership's momentum and long-term goals."  *Id.* ¶ 25.  BioFilm's executives "also repeatedly assured [Plaintiff's representative] that [Plaintiff] should continue with its ongoing activities on behalf of BioFilm, as BioFilm had been doing business with other distributors for 10, or even 20 years, without any written contracts.  FAC ¶ 25.  BioFilm's executive, through statements, downplayed the importance of written contracts.  *Id.* ¶ 26.

On or around June 2023, BioFilm informed Plaintiff that Combe was set to acquire it.  *Id.* ¶ 37.  On August 17, 2023, BioFilm's president emailed Plaintiff's executive

instructing it to cease all sales and distribution in Brazil and Mexico, countries where Combe had "strong coverage." *Id.* ¶ 38. This email likewise advised that Combe's senior vice president sought a meeting with that executive to discuss operations in Colombia and Venezuela. *Id.* Upon meeting, Combe's vice president denied that Plaintiff and BioFilm held any enforceable contracts. *Id.* ¶¶ 39. Combe's senior vice president did, however, suggest that Plaintiff continue its operations in Colombia, which Plaintiff found unacceptable due to its relatively small market size. *Id.* ¶ 40.

"[O]n or around August 17, 2023, [Plaintiff] ceased its efforts to distribute Astroglide in Latin America, other than selling out existing inventory in Colombia. During the 3+ years that it had acted as BioFilm's distributor, [Plaintiff] spent over $700,000 in obtaining regulatory certifications and in building out sales channels." FAC ¶ 42. Plaintiff "had to postpone raising investor capital because of losing its main product that had absorbed the bulk of investment and was creating the most sales." *Id.* ¶ 44. Due to this dispute, Plaintiff calculates that it "has lost at least $10 million in profits that it would have otherwise earned from those contracts." *Id.* ¶ 46.

Plaintiff filed an initial complaint on August 15, 2024, followed by its FAC, the operative complaint, on November 12, 2024. Doc. Nos. 1, 11. Plaintiff alleges five causes of action: (1) Breach of Oral Contract against both Defendants; (2) Tortious Interference with Contract against Combe; (3) Promissory Estoppel against both Defendants; (4) Unjust Enrichment against both Defendants; and (5) Quantum Meruit against both Defendants. FAC ¶¶ 47–91.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the complaint's sufficiency. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted).

Evaluating a motion to dismiss under Rule 12(b)(6),[3] the Court must accept as true all factual allegations and construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998). Ruling on a Rule 12(b)(6) motion to dismiss, a court generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998).

When granting a motion to dismiss, the Court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when doing so would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings . . . demonstrate that further amendment would be futile.").

### III. DISCUSSION

Defendants move the Court to dismiss each cause of action in Plaintiff's amended complaint. *See generally* Doc. No. 19. Plaintiff opposes dismissing any cause of action. *See generally* Doc. No. 20. As a preliminary matter, Plaintiff alleges that the parties agreed, in contract, that California law governs any agreement between them. FAC ¶ 21. Defendants "do not concede that California law was agreed upon in any alleged contract or that California law applies." Doc. No. 19 at 18 n.3.[4] However, they argue that the

---

[3] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.
[4] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

Court should apply California law in resolving this motion, as it sits in that state, and premises the entirety of its legal argument upon California law.  *Id.*  Based upon the parties' mutual agreement, the Court applies California law for the purpose of resolving the present motion to dismiss.

## A.    Breach of Oral Contract

Defendants seek to dismiss Plaintiff's first cause of action, breach of oral contract, on various grounds, including that the alleged contracts are barred by the Statute of Frauds and that Plaintiff fails to sufficiently allege a mutual manifestation to definite, material terms, breach, and damages.  Doc. No. 19 at 19–20.

"[Under California law] [t]he elements of a breach of oral contract claim are the same as those for a breach of written contract . . . .  To state a claim for breach of contract, a plaintiff must allege the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Glob. Plastic Sheeting v. Raven Indus.*, No. 17-CV-1670 DMS (KSC), 2018 WL 3078724 *3 (S.D. Cal. Mar. 14, 2018) (internal citations and quotation marks omitted).

As a preliminary matter, neither party addresses whether the contracts alleged here fall under California's Commercial Code, the state's version of the Uniform Commercial Code.  The code covers "both a present sale of goods and a contract to sell goods at a future time." Cal. Com. Code § 2106(1).  Here, the central arrangement was that Plaintiff "would act as BioFilm's [m]aster [d]istributor for Latin America . . ." and that it was "simply an independent purchaser and seller of Astroglide . . . ."  FAC ¶ 14, 17.  This is at heart—at least as pleaded—an agreement for the future purchase of Astroglide.  *See, e.g.*, *JBL Enterprises, Inc. v. Jhirmack Enterprises, Inc.*, 519 F. Supp. 1084, 1094–95 (N.D. Cal. 1981), *aff'd*, 698 F.2d 1011 (9th Cir. 1983), *cert. denied*, 464 U.S. 829 (1983) (finding that a similar exclusive distributor agreement, while it  contained "terms not relating strictly to sales, its purpose and effect is clearly to provide for the sale of goods . . . to its distributors . . .[and] is therefore a contract to sell goods at a future time . . .

within the meaning of Commercial Code [§] 2106 . . ."); *see also Orteck Int'l Inc. v. Transpacific Tire Wheel, Inc.*, 704 F. Supp. 2d 499, 512–13 (D. Md. 2010), *aff'd* sub nom. *Orteck Int'l v. TransPacific Tire & Wheel, Inc.*, 457 F. App'x 256 (4th Cir. 2011) (interpreting a similar provision in Maryland's equivalent law); *but cf. Siam Numhong Prods. Co. v. Eastimpex*, 866 F. Supp. 445, 448 (N.D. Cal. 1994). Thus, the Court finds for the limited purpose of resolving Defendants' motion to dismiss that the agreements fall under the California Commercial Code's provisions for sales of goods.

Defendants assert that the alleged oral contracts are barred by the Statute of Frauds. [5] *Id.* Plaintiff responds that the parties both partially performed, and thus the contract is enforceable, and that Plaintiff has adequately pleaded the existence of writings documenting the agreements' terms. Doc. No. 20 at 10–12.

"In California, the statute of frauds provides that a contract for the sale of goods valued over $500 is unenforceable unless there is some writing 'sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought.'" *Herbalife Int'l of Am., Inc. v. E. Computer Exch., Inc.*, 723 F. Supp. 3d 888, 903 (C.D. Cal. 2024) (quoting Cal. Com. Code § 2201(1)). Here, Plaintiff alleges that it lost approximately "$10 million in profits that it would have otherwise earned" from Astroglide resales under the alleged contracts. FAC ¶ 45. Thus, on this record the Court can reasonably infer that the relevant goods were valued at $500 or less, and that the Statute of Frauds applies for the purposes of resolving this motion.

Additionally, California's general Statute of Frauds provides that "[a]n agreement that by its terms is not to be performed within a year from the making thereof" is invalid unless it, "or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent." Cal. Civ. Code § 1624(a)(1). Plaintiff

---

[5] Traditionally, the Statute of Frauds is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1); *Crystal Springs Upland Sch. v. Fieldturf USA, Inc.*, 219 F. Supp. 3d 962, 976 (N.D. Cal. 2016). However, courts have found that where a Plaintiff pleads an oral contract, it may be addressed in a Rule 12(b)(6) motion. *See Crystal Springs Upland Sch.*, 219 F. Supp. 3d at 976; *Elkay Int'l Ltd. v. Color Image Apparel, Inc.*, No. CV1408028MMMVBKX, 2015 WL 13917734 *6 (C.D. Cal. Feb. 4, 2015).

pleads that performance of the agreements was to take place over five-year terms. FAC ¶ 14.  Thus, under either the California Commercial Code or California's Civil Code, the contracts are subject to the Statute of Frauds.

The required writing "functions only as evidence of the contract and need not contain every term." *Herbalife Int'l of Am., Inc.*, 723 F. Supp. 3d at 903 (quoting *Kerner v. Hughes Tool Co.*, 128 Cal. Rptr. 839, 845 (Cal. Ct. App. 1976)).  "A letter, however, may be a sufficient memorandum to take a case out of the statute of frauds." *Kerner*, 128 Cal Rptr. 839 at 845.  It need only "contain a statement of the salient terms of the bargain." *Kerner*, 128 Cal Rptr. 839.  This requirement is functionally similar for contracts not under the California Commercial Code, where "[t]he writing need not contain all of the contract's terms; it is sufficient 'if it identifies the subject of the parties' agreement, shows that they made a contract, and states the essential contract terms with reasonable certainty.'" *Harshad & Nasir Corp. v. Glob. Sign Sys., Inc.*, 222 Cal. Rptr. 3d 282, 295 (Cal. Ct. App. 2017) (quoting *Sterling v. Taylor*, 152 P.3d 420, 425 (Cal. 2007)).  For such agreements "[w]hat is essential depends on the agreement . . . its context[,] and . . . the subsequent conduct of the parties." *Sterling*, 152 P.3d at 424–25.  "A note or memorandum . . . subscribed by the party to be charged is adequate . . . [.] [It] usually does not contain all of the [contract's] terms . . . .  In most instances it is not even necessary that the parties intended the memorandum to serve a contractual purpose." *Id.* (cleaned up, internal quotation marks and citations omitted); *see also* Cal. Civ. Code § 1624(b)(3)(D) (sufficient evidence of a contract exists if "[t]here is a note, memorandum, or other writing sufficient to indicate that a contract has been made, signed by the party against whom enforcement is sought or by its authorized agent or broker").

Here, Plaintiff points to the Letters of Authorization BioFilm's president allegedly authored, enabling Plaintiff to act as Astroglide's distributor in Colombia, Mexico, and Venezuela, as sufficient memoranda evidence to meet the Statute's requirements.  Doc. No. 20 at 11–12.  These letters, Plaintiff continues, contain the essential term: that Plaintiff be BioFilm's exclusive Astroglide distributor.  *Id.*; *see* FAC ¶¶ 14–22, 27, 30,

32.  The Court disagrees.  While Plaintiff summarizes that the Letters of Authorization "appoint[ed] Cosmonova as the exclusive Astroglide distributor for [the relevant countries]," FAC ¶ 27, it does not allege the actual contents of these documents, necessary here for the Court to determine that Plaintiff plausibly pleads a contract which could overcome the Statute of Frauds when it is established that the initial agreements were oral.  Instead, Plaintiff alleges only their legal effect.  Likewise, Plaintiff's allegations that BioFilm sent it "pricing list[s]" in May and June 2020 is insufficient.  As to those documents, Plaintiff makes no allegations as to which country's agreement they pertain, quantities to be sold, or anything more than a broad description that they were "pricing lists" (for, the Court infers, Astroglide).  *See* FAC ¶ 22.  As to Plaintiff's other allegations that BioFilm confirmed terms of the agreements in writing, Plaintiff does not specify what terms (or whether it was all terms).  *Id.*[6]  These allegations are simply insufficient for the Court to determine find Plaintiff has sufficiently pleaded that the agreements satisfy the Statute of Frauds.  *See, e.g.*, *Virgin Scent, Inc. v. BT Supplies W., Inc.*, 615 F. Supp. 3d 1118, 1133–34 (C.D. Cal. 2022) ("[W]hile these statements do appear to confirm the existence of an agreement . . . they are unclear as to the quantity of masks purchased—an essential term."); *Elkay Int'l Ltd. v. Color Image Apparel, Inc.*, No. CV1408028MMMVBKX, 2015 WL 13917734 *6 (C.D. Cal. Feb. 4, 2015). ("[T]he writing must be signed, it must indicate that a contract has been made, and it must specify a quantity term.").

Further, as to Plaintiff's alleged oral contracts for other Latin American countries, Plaintiff does not plead the existence of Letters of Authorization.  At best, Plaintiff relies on vague allegations regarding pricing lists, recorded phone calls, "acknowledged . . . plans . . .," expressed "support for the partnership's momentum and long-term goals," and "confirmations."  *See* FAC ¶ 22, 23, 25, 34, 36.  These allegations, similar to the above

---

[6] Plaintiff alleges that BioFilm's executives confirmed "some or all" of the material terms in writing. FAC ¶ 22.  It is unclear whether Plaintiff is unsure which of the two it is, or whether Plaintiff is alleging that it needs to conduct further investigation but believes that BioFilm confirmed all material terms.

and containing no information as to the documents or communications' contents or which terms it purports to confirm, are insufficient to plead compliance with the Statute of Frauds. *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

Turning to its argument that the parties' mutual part performance takes the agreement out of the Statute of Frauds, Plaintiff cites only one case, *In re Marriage of Benson*, 116 P.3d 1152 (Cal. 2005). However, that case concerns a unique family code provision applied to marital property. 116 P.3d at 1154. The California Commercial Code, as discussed above, states clear exceptions to the Statute of Frauds. Cal. Comm. Code § 2201(3). Relevant here, "[a] contract that does not satisfy the requirements of California Commercial Code § 2201(1) 'but which is valid in other respects is enforceable ... [w]ith respect to goods for which payment has been made and accepted or which have been received and accepted [.]'" *Marantz Bros., LLC v. Tate & Lyle Ingredients Americas LLC*, No. CV 20-317 PSG (AFMX), 2022 WL 17190270 (C.D. Cal. July 28, 2022); Cal. Comm. Code § 2201(3)(c). And when a statute enumerates certain exceptions to its general rule, as here, the Court is especially hesitant to infer a new one. *See, e.g.*, *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054–55 (9th Cir. 2018) ("[T]he doctrine of *expressio unius est exclusio alterius* as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.") (citations and internal quotation marks omitted); *cf. Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n*, 743 P.2d 1323, 1329–30 (Cal. 1987) (discussing *expressio unius est exclusio alterius* in California law). Here, Plaintiff demonstrates nothing to warrant deviating from that principle and recognizing an exception of mutual part performance.

Additionally, courts interpreting California's general Statute of Frauds decline to apply a partial performance exception when the relief sought and appropriate is legal, rather than equitable. *See Anderson v. Stansbury*, 242 P.2d 305, 310 (Cal. 1952) (The payment of money "is not sufficient part performance to take the oral agreement out of

the . . . statute of frauds . . . for the party paying money under an invalid contract has an adequate remedy at law.") (internal citations and quotation marks omitted); Restatement (2d.) of Cont. § 129(c) (1981) ("[T]he present rule is limited to equitable relief[] and does not make available an ordinary action for damages for breach of contract . . . ."); Restatement (2d.) of Cont. § 129 cmt. c (1981). Even to the extent that it supports a partial performance argument, *In re Marriage of Benson* implicitly confirms this selective application. 116 P.3d at 1159 ("[W]here assertion of the statute of frauds would cause unconscionable injury, part performance allows specific enforcement of a contract that lacks the requisite writing.") Here, Plaintiff seeks legal damages for its breach of contract claims. *See* FAC at 20. While it does seek "restitution of the amounts by which Defendants were unjustly enriched[,]" *see* FAC at 14, it may not recover contract damages and damages for unjust enrichment. *See Clear Channel Outdoor, Inc. v. Bently Holdings Calif. LP*, No. C-11-2573 EMC, 2011 WL 6099394 *9 (N.D. Cal. Dec. 7, 2011). The two are viable only as alternatives.

Therefore, the Court will not recognize an exception to the Statute of Frauds based on mutual part performance at this juncture and upon this record.[7] The Court agrees with Defendants that Plaintiff has not pleaded these contracts satisfy the Statue of Frauds' writing requirement and thus **GRANTS** Defendants' motion to dismiss Plaintiff's breach of oral contracts claim (Claim 1).[8]

## B.    Tortious Interference

Defendants next seek to dismiss Plaintiff's claim for tortious interference against Combe on the grounds that: (1) there was no contract; (2) Plaintiff's alleging that Combe

---

[7] Plaintiff additionally does not sufficiently plead that both parties partially performed the alleged oral contracts for Bolivia, Brazil, Chile, Ecuador, Paraguay, Peru, and Uruguay. Though Plaintiff alleges that BioFilm authored Letters of Authorization for Colombia, Mexico, and Venezuela—arguably partial performance—pursuant to the alleged agreement, FAC ¶ 22, it makes no allegations of any performance undertaken by BioFilm for the remaining countries: Bolivia, Brazil, Chile, Ecuador, Paraguay, Peru, and Uruguay. FAC ¶¶ 34, 36.

[8] Finding that the Statute of Fraud applies, and that Plaintiff does not plead its requirements, the Court thus need not assess the parties' remaining breach of oral contract arguments.

is a party to the contract inherently defeats the claim; (3) Plaintiff pleads no independent wrong beyond breach of contract; and (4) that the economic loss doctrine bars this claim. Doc. No. 19 at 27–30.  Plaintiff responds that there was a contract, that its claim is one in the alternative should Combe not be found to be BioFilm's successor, that the independent wrongful act element does not apply to this type of contract, and that the economic loss doctrine does apply.  Doc. No. 20 at 18–20.

Under California law, "[t]ortious interference with contractual relations requires "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 470 P.3d 571, 575 (Cal. 2020).  Where a contract already exists, unless it is terminable at-will, it is not necessary that a defendant's conduct be "wrongful apart from the interference with the contract itself." *Id.* at 575–80.

Here, as Plaintiff has not pleaded a contract that satisfies the Statute of Frauds, it cannot satisfy the first element. *See Secrest v. Sec. Nat'l Mortg. Loan Tr. 2002-2*, 84 Cal. Rptr. 3d 275, 282 (Cal. Ct. App. 2008), *as modified on denial of reh'g* (Nov. 3, 2008) ("A contract coming within the statute of frauds is invalid unless it is memorialized by a writing . . . .") (common law context); *Elkay Int'l Ltd.*, 2015 WL 13917734 at *6 (same, quoting *Secrest*).  Therefore, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's tortious interference with contract claim (Claim 2).

## C.    Promissory Estoppel

Defendants also move to dismiss Plaintiff's promissory estoppel claims because: (1) it is "duplicative of the breach of contract claim" with which its success is mutually exclusive; (2) it alleges contractual consideration; and (3) Plaintiff fails to allege specific facts showing that "injustice can be avoided only by its enforcement."  Doc. No. 19 at 30–32.  Plaintiff responds that: (1) regardless of mutual exclusivity between success on contract and estoppel claims, it may plead them both as alternatives to one another; and

(2) Plaintiff sufficiently pleads injustice can be avoided only through enforcement.  Doc. No. 20 at 21–22.

"Under California law, the elements of a claim for promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [that reliance is] both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Elkay Int'l Ltd.*, 2015 WL 13917734 at \*7 (quoting *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864 JSW, 2007 WL 3232276, \*6 (N.D. Cal. Nov. 1, 2007) (internal quotation marks omitted)).  "A promise that is vague, general or of indeterminate application is not enforceable. To be enforceable, the promise must be sufficiently definite that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Id.* (internal quotation marks omitted).

First, the Court disagrees with Defendants' argument that, in sum, this claim must fail because it is "duplicative of the breach of contract claim" with which its success is mutually exclusive.  As Plaintiff notes, it is unambiguous that "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).  Specifically, "[m]odern pleading practice allows a party to plead promissory estoppel in the alternative to breach of contract based on the same facts." *Herbalife Int'l of Am., Inc.*, 723 F. Supp. 3d at 911.  "As such . . . allegation[s] of bargained-for consideration does not defeat [a] cause of action for promissory estoppel . . . ." *Id.*

So far as Defendants claim that these two specific types of claims present a special case and Plaintiff may still not plead them together even as alternatives, Defendants' case law does not support that proposition.  Of the two cited, one case did not involve a dispute over the existence of a valid contract, and in the other, both the promissory estoppel and contract claims proceeded to judgment as alternatives. *JMP Sec. LLP v. Altair Nanotechnologies, Inc.*, 880 F. Supp 2d 1029, 1041 (N.D. Cal. 2012) (finding alternative claims inviable because "[t]he only thing at issue here is under which

provision of the contract [Plaintiff] will be paid for its services, not whether there was a contract for services at all or whether the promises contained in the contract were supported by consideration."); *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 149 Cal. Rptr. 3d 440, 443–44, 450 (Cal. Ct. App. 2012) (assessing the difference between estoppel and contract claims for the purposes of awarding attorneys' fees post-judgment). Thus, Plaintiff may plead both breach of oral contract and promissory estoppel as alternatives.

Finally, Plaintiff pleads that it "spent over $700,000 in obtaining regulatory certifications and in building out sales channels," which it alleges is a loss due to Defendants' actions. *See* FAC ¶ 71; *see also, e.g.*, FAC ¶ 31. This investment was undertaken, Plaintiff alleges, relying on the promise that it would act as Astroglide's exclusive distributor in the relevant countries for five years after entering into the respective agreements. *Id.* ¶¶14–16. Plaintiff's pleadings also plausibly allege that regulatory approval was a contemplated task when the parties negotiated and undertook their agreement. *Id.* ¶¶ 12, 32. At the pleadings stage, the Court determines that this is sufficient to determine that sufficient injury may occur should it deny enforcing the agreement. Therefore, the Court **DENIES** Defendants' motion to dismiss as to Plaintiff's promissory estoppel claim (Claim 3).

**D.    Unjust Enrichment**

Defendant seeks to dismiss Plaintiff's fourth claim, unjust enrichment, on the grounds that California law does not provide for such a cause of action, and that unjust enrichment is a remedy to contract or quasi-contract. Doc. No. 19 at 32. Plaintiff disagrees, citing Ninth Circuit precedent allowing such claims to proceed. Doc. No. 20 at 22. California courts of appeal are split on whether an independent cause of action exists for unjust enrichment. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1039 (9th Cir. 2016) (collecting cases); *Solar Integrated Roofing Corp. v. Massey*, No. 23-CV-2323-MMA (AHG), 2024 WL 1973503 *5 (S.D. Cal. May 3, 2024) (collecting cases); *but see Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ("[I]n California, there

is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'").  Without definitively resolving the split, the Ninth Circuit has allowed unjust enrichment claims to proceed "as an independent cause of action" or alternatively "a quasi-contract claim for restitution."  *ESG Cap. Partners, LP*, 828 F.3d at 1039 (citing, in part, *Astiana*, for this proposition).  In such cases, a plaintiff may not recover on both claims that an enforceable, binding contract exists and unjust enrichment, but it may plead both as alternatives to one another.  *See Clear Channel Outdoor, Inc.*, 2011 WL 6099394 at *9.  Given that the case law is unsettled, the Court **DENIES** Defendant's motion to dismiss as to Plaintiff's unjust enrichment claim (Claim 4) without prejudice to raising this argument at a later stage of litigation.

**E.    Quantum Meruit**

Next, Defendants move to dismiss Plaintiff's quantum meruit claim on the grounds that Plaintiff: "(1) alleges it acted purely as an independent distributor of Astroglide and thus did not perform any services for the benefit of Defendants; (2) does not, and cannot, allege that Defendants were unjustly enriched; and (3) fails to allege how ten million dollars is the 'reasonable value' of any alleged services."  Doc. No. 19 at 32.  Plaintiff argues in return that: (1) the service provided was "time and money to obtain necessary regulatory certifications to act as Defendants' exclusive distributor of Defendants' Astroglide product"; (2) that Defendants benefitted by "creating entirely new markets for Astroglide" in which they profited by "selling their product to Plaintiff for exclusive distribution in previously untapped markets"; and (3) that the $10 million figure for lost profits is reasonable.  Doc. No. 20 at 22–24.

"Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant."  *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992).  To succeed on a quantum meruit claim, a Plaintiff must plead "(1) valuable services rendered for or materials furnished to the person sought to be charged; (2) which services and

materials were accepted by the person sought to be charged, used and enjoyed by him; and (3) under such circumstances as would reasonably inform the person sought to be charged that plaintiff, in performing such services, was expecting to be paid . . . ." *Fontaine v. Home Box Off., Inc.*, 654 F. Supp. 298, 303 (C.D. Cal. 1986) (modified here as partially overruled by *In re De Laurentiis Ent. Grp.*, 963 F.2d at 1272–74).

Here, Plaintiff's claim for quantum meruit must fail. As Defendants argue, the Court finds that Plaintiff did not "furnish services" to Defendants. This issue is not as Plaintiff understands it, an issue over from where or whom Plaintiff was to expect payment for its performance. *See* Doc. No. 20 at 23–24. Instead, this is a fundamental issue as to whether Plaintiff provided Defendant services, or whether the two parties engaged in another relationship entirely. While Plaintiff argues in its motion that it "spent time and money to obtain necessary regulatory certifications" for sales on Defendants' behalf, its pleadings do not support this conclusion. *See id.* Plaintiff alleges that it was "limited to buying Astroglide from BioFilm and re-selling that product within the country in question. [Plaintiff] was simply an independent purchaser and seller of Astroglide and any profits that it derived from those re-sales would belong to [Plaintiff]." FAC ¶ 17. Thus, the energy, time, and money spent seeking regulatory certification was not merely a "service" to Defendants under traditional quantum meruit claims, but an action equally as beneficial to Plaintiff. *Cf. Fontaine*, 654 F. Supp. at 303 (describing traditional quantum meruit claims under English common law as "goods sold and delivered, for work done for and material furnished the defendant at his request, for money lent, for money paid and expended at defendant's request, for money had and received to the plaintiff's use, and upon an account stated in an accounting between the parties") (citing 5 R. Pound, Jurisprudence, § 34 at p. 474 (1959)). Indeed, Plaintiff appears to implicitly understand the nature of the relationship in its response in opposition, recognizing that "[s]ales that benefitted Plaintiff likewise benefited Defendants . . . ." Doc. No. 20 at 23. Therefore, on this record, the Court finds that Plaintiff has not pleaded it provided Defendants a "service."

However, assuming Plaintiff can ultimately plead its performance under the contracts amounted to "services" to Defendants, the Court finds that Plaintiff does plead that Defendant received an unfair benefit connected to them.  Looking to Plaintiff's unjust enrichment pleading, which shares similar—though critically not identical—elements,[9] it claims that due to its sales efforts, "now there has been greatly enhanced brand awareness" for Astroglide, though "[p]reviously, there was little awareness of Astroglide amongst pharmacies and physicians throughout Latin America."  FAC ¶ 80.  This benefit, Plaintiff claims, makes up part of the "tens of millions of dollars in extra sales of Astroglide" that have come from Plaintiff's sales efforts.  *Id.* ¶ 81.  Plaintiff incorporates these paragraphs by reference into his quantum meruit claim.  *Id.* ¶ 83.  Whether this amount is "reasonable" will depend, at least in part, on factual development and is not thus properly decided at this stage.

Nevertheless, because Plaintiff does not allege that it provided "services" to Defendants, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's quantum meruit Claim (Claim 5).

## F.    Damages

Finally, Defendants seek to challenge certain damages under Rule 12(b)(6) or, alternatively, Rule 12(f).  Specifically, Defendants challenge Plaintiff's request for consequential damages and attorney's fees, asserting that they are not recoverable by law.  Doc. No. 19 at 34–36.  Plaintiff argues that its consequential damages are reasonably ascertainable and that it may recover attorneys' fees under the "tort of another" doctrine.  Doc. No. 20 at 20–30.

At the outset, "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."  *Whittlestone,*

---

[9] "The elements of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Clear Channel Outdoor, Inc.*, 2011 WL 6099394 at *9 (citing *Lectrodryer v. SeoulBank*, 91 Cal. Rptr. 2d 881, 883 (Cal. Ct. App. 2000)).  Notably, this lacks the "services" requirement for quantum meruit.

*Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975, (9th Cir. 2010).  As entitlement to certain categories of damages relies heavily on factual development, it is naturally a determination more fit for the summary judgment or trial stage.  However, multiple district courts "interpret *Whittlestone* narrowly as authorizing a motion to dismiss a damage prayer only where defendant contends the damages are precluded as a matter of law." *Sturm v. Rasmussen*, No. 18-CV-01689-W-BLM, 2019 WL 626167 *3 (S.D. Cal. Feb. 14, 2019) (collecting cases).  The Court will apply that approach here.

Plaintiff's remaining claims are for promissory estoppel and unjust enrichment.  Generally, "for the purposes of damages, promissory estoppel and contract actions may be treated the same . . . ." *US Ecology, Inc. v. State of Cal.*, 28 Cal. Rptr. 3d 894, 907 (Cal. Ct. App. 2005).  Thus, at this stage, the Court finds that Plaintiff may seek consequential damages and **DENIES** Defendants' motion to dismiss as to Plaintiff's prayer for consequential damages.  However, California law is clear that a party may not seek contract-based attorneys' fees under an unjust enrichment or promissory estoppel cause of action. *Douglas E. Barnhart, Inc.*, 149 Cal. Rptr. 3d at 448, 455.  Likewise, Plaintiff's argument that it is entitled to attorneys' fees arising from the "tort of another" doctrine is based on its tortious interference claim, which the Court has dismissed.  Doc. No. 30 at 29–30.  Thus, there appears to be no authorization for Plaintiff's seeking attorney's fees as currently pleaded. *See Trope v. Katz*, 902 P.2d 259, 262–63 (Cal. 1995) ("California follows . . . the American rule, which provides that each party . . . must ordinarily pay his own attorney fees. . . . The Legislature has since enacted several statutory exceptions . . . and we have . . . develop[ed] three additional exceptions—the common fund, substantial benefit, and private attorney general theories of recovery.")  Thus, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's prayer for attorney's fees to the extent this request is made in connection with Plaintiff's unjust enrichment and promissory estoppel claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

Defendants' motion to dismiss.  Dismissal is without prejudice and with leave to amend. Any second amended complaint will be the operative pleading and must be filed on or before **February 18, 2025**.  Defendants must then respond within the time prescribed by Federal Rule of Civil Procedure 15.  Any claim not re-alleged and any defendant not named in the third amended complaint will be considered waived.  *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1989); *Lacey v. Maricopa Cnty*., 693 F.3d 896, 928 (9th Cir. 2012) (noting that after dismissal with leave to amend, claims may be "considered waived if not repled").  <u>The second amended complaint must be accompanied by a version of that pleading that shows—through redlining or similar method—how that pleading differs from the previously dismissed pleading</u>.  *See* CivLR 15.1.c.

    **IT IS SO ORDERED**.

Dated:  January 28, 2025

HON. MICHAEL M. ANELLO
United States District Judge